UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22870-CIV-SINGHAL

MILAGROS DEL VALLE,

    Plaintiff,

v.

GASTRO HEALTH, LLC, a Florida Limited
Liability Company f/k/a GASTRO HEALTH,
PL f/k/a GASTROENTEROLOGY CARE
CENTERS, LLC,

    Defendant.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment, filed on August 15, 2022 (the "Motion") (DE [25]). Defendant filed an accompanying Statement of Material Facts ("DSOF") (DE [26]). Plaintiff filed a Response (DE [36]) and accompanying Statement of Material Facts ("PSOF") (DE [35]) on September 12, 2022. Defendant filed a Reply on September 19, 2022 (DE [37]). The Motion is now ripe for this Court's consideration.

    I.    **BACKGROUND**

Plaintiff filed the instant action seeking recovery for purported violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760 *et seq. See* Compl., at 1 (DE [1]). Plaintiff alleges she suffers from multiple disabilities and chronic health conditions that entitle her to benefits under the FMLA and protection from discrimination under the FCRA. *Id.* at 3. Plaintiff asserts she made Defendant aware of her health conditions and her

doctor's treatment plan which recommended she take medical leave. *Id.* Plaintiff contends she initially requested and was approved for one week of medical leave using her paid time off. *Id.* However, according to Plaintiff, despite Defendant's knowledge of her need for leave, Defendant failed to provide her notice of her FMLA rights or designate her upcoming leave as FMLA protected leave. *Id.* Shortly thereafter, Plaintiff asserts, she contacted Defendant's human resources department requesting FMLA paperwork. *Id.* At various times, Plaintiff dealt with many of Defendant's employees, among them Ana Pardino and Jennifer Muina. On August 8, 2019, Plaintiff alleges, four days before she was set to begin her medical leave and one day after she requested FMLA papers, she was terminated. *Id.* Plaintiff alleges the stated reasons for her termination were fabricated after she disclosed her need and intention to take medical leave as a means of discrimination and retaliation against her and to interfere with her rights under the FMLA, Section 510 of ERISA, and the FCRA. *Id.* Plaintiff seeks (i) a declaration from this Court that Defendant's actions were unlawful, (ii) back pay and front pay, (iii) medical expenses, (iv) compensatory damages, (v) liquidated damages, (vi) an award of interest, costs, reasonable attorney fees, and expert witness fees, (vii) punitive damages, (viii) equitable relief, (ix) declaratory relief, (x) pre-judgment and post-judgment interest, and (xi) a jury trial. *Id.* at 3–4.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v.*

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

2

*North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III. <u>DISCUSSION</u>

Defendant seeks summary judgment on several grounds. First, Defendant argues Plaintiff cannot show entitlement to FMLA leave or that Defendant interfered with her

3

FMLA rights because she does not suffer from a serious health condition and did not provide adequate notice to Defendant. Furthermore, Defendant contends Plaintiff cannot prove a prima facie case of retaliation under the FMLA or refute Defendant's legitimate, non-discriminatory reasons for Plaintiff's termination because Defendant made the decision to terminate Plaintiff well before Plaintiff's alleged protected activity. Second, Defendant argues Plaintiff is unable to prove she was disabled under the FCRA or offer any evidence of discrimination because Plaintiff admitted in her deposition she was not disabled and has not shown that any of her major life activities are limited. Defendant asserts Plaintiff never requested an accommodation under the FCRA or provided information sufficient to alert Defendant of the need for an accommodation. Additionally, Defendant contends Plaintiff is unable to show her termination is causally related to any protected activity under the FCRA. Third, Defendant argues Plaintiff cannot point to record evidence of Defendant's intent to interfere with her ERISA benefits or protections.

### A. FMLA

"If an employer interferes with an employee's FMLA rights, she may sue for equitable relief or money damages." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006)). "This archetypal FMLA claim is often called an 'interference claim,' because the employee asserts that her employer denied or otherwise interfered with her substantive rights under the FMLA." *Id.* (cleaned up). To allege an FMLA interference claim, a plaintiff must show (1) the employee was entitled to a benefit under the FMLA, and (2) the employer denied that benefit. *Id.* (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010)).

1. <u>Entitlement to a Benefit</u>

To be entitled to an FMLA benefit, an employee "must demonstrate that she [1] sought leave for a qualifying reason and that she [2] provided notice meeting certain criteria." *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1242 (11th Cir. 2021) (citations omitted).

a. Qualifying Reason

"An employee is entitled to FMLA leave if she has a serious health condition that makes her unable to perform the functions of her position." *Id.* "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Here, Plaintiff has not presented evidence she receives inpatient care in a hospital or other medical facility. Rather, Plaintiff contends she receives continuing treatment by a health care provider. Plaintiff states she was diagnosed with migraine and anxiety disorders for which she was prescribed medication and for which she sees medical providers on a continuing basis. *See* PSOF ¶¶ 38–54.

A serious health condition involving continuing treatment by a health care provider includes chronic conditions. 29 C.F.R. § 825.115. A chronic serious health condition is one which (1) requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider, (2) continues over an extended period of time (including recurring episodes of a single underlying condition), and (3) may cause episodic rather than a continuing period of incapacity. 29 C.F.R. § 825.115(c). Here, Plaintiff asserts she was medically diagnosed with a migraine disorder over 20 years ago. *See* PSOF ¶ 38. Plaintiff states she is prescribed medications to manage her migraine disorder, which has been persistent and

5

continuous for the past 20 years. *Id.* ¶¶ 39–40. Specifically, Plaintiff is prescribed Zolmitriptan and regularly sees her doctor for continuing care appointments and to have her prescriptions refilled. *Id.* ¶¶ 41–42. During her migraines, Plaintiff asserts she cannot think clearly, cannot see, and experiences numbness in her arms. *Id.*¶¶ 46–47. A reasonable jury could infer Plaintiff sees her doctor for treatment of her migraine disorder at least twice a year, the migraine disorder has extended over a period of time (over 20 years), and the migraine disorder causes periodic episodes of incapacity.

Besides her migraine disorder, Plaintiff also states she suffers from a diagnosed anxiety disorder. Plaintiff declares she has been diagnosed with this disorder for over 20 years and regularly sees a physician who prescribes medication for treatment. *Id.* ¶ 49–52. Moreover, she states the disorder affects her ability to concentrate and think, deal with stress, sleep, eat, and communicate. *Id.* ¶¶ 50–53. A reasonable jury could find Plaintiff regularly sees her doctor for treatment of this disorder at least twice a year, the disorder has extended over a period of time (over 20 years), and it causes her periodic episodes of incapacity.

Plaintiff also states she suffers from a non-specific seizure disorder. Plaintiff declares she is prescribed medication for this disorder which she has taken since 2018. *Id.* ¶¶ 55–56. Plaintiff states she must take this medication to ensure she does not have a seizure in the future and would be at risk of a seizure if she were to stop taking the medication. *Id.* ¶ 57. A reasonable jury could infer Plaintiff regularly sees her doctor at least twice a year for treatment of this condition, this disorder has extended over a period of time (several years), and it causes her periodic episodes of incapacity when it flares up.

Defendant challenges whether Plaintiff's cited conditions qualify as chronic

conditions. However, these arguments rest on the consideration and weighing of different facts in the record. Thus, for these reasons, the Court finds there are at least disputed questions of material fact whether Plaintiff suffers from one or more serious health conditions that make her unable to perform the functions of her position.

### b. Notice

"An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015). With regard to timing, "[i]f an employee's need for leave is foreseeable, she must give her employer at least 30 days' advance notice . . . ." *Id.* (citing 29 U.S.C. § 2612(e)(2)) (cleaned up). "If . . . an employee's need for leave is unforeseeable, the 30-day requirement does not apply." *Id.* (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)) (cleaned up). With regards to content, "an employee need not explicitly mention the FMLA when giving notice to her employer." *Id.* (cleaned up). "If the need for leave if foreseeable, an employee must give her employer notice that is sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and of the anticipated timing and duration of the leave." *Id.* (citing 29 U.S.C. § 825.302(c)). "If the need for leave is unforeseeable, an employee need only provide sufficient information for her employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* (citing 29 U.S.C. § 825.303(b)).

Here, Plaintiff testified she sought leave in early August on an emergency basis for medical issues as advised by her doctor. *See* PSOF ¶ 20. Plaintiff testified she was experiencing more migraines, anxiety and panic attacks, and her doctor recommended she take 2–3 months off. *Id.* Plaintiff testified she sought only one week off so as not to

7

disadvantage Defendant. *Id.* Defendant responds that Plaintiff admitted in her deposition she was not planning to take FMLA leave in early August but had simply inquired about FMLA leave generally in case she needed it in the future. A reasonable jury could find that Plaintiff's need for leave was unforeseeable and infer Plaintiff notified her employer that she needed to take time off based on her doctor's recommendation due to increased migraines, anxiety, and panic attacks. That Plaintiff did not specifically state she was seeking leave under the FMLA is immaterial to the extent Plaintiff provided Defendant sufficient information for the *employer* to determine whether the FMLA applied to her leave request. Thus, the Court finds there are at least genuine issues of material fact whether Plaintiff provided sufficient notice.

### 2. *Prima Facie* Retaliation

"To establish a *prima facia* case of retaliation, an FMLA plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Wills v. Walmart Assocs., Inc.*, 2022 WL 845183, at *17 (S.D. Fla. Mar. 22, 2022) (citing *Strickland*, 239 F.3d at 1207) (cleaned up). The parties contest whether Plaintiff's termination was causally related to her seeking FMLA leave. Plaintiff argues her conversation with Pardino on August 7 and subsequent termination the next day are probative of causation due to the very close temporal proximity. Defendant argues it is not because Muina had made the decision to terminate Plaintiff shortly after taking over the department in February 2019 and beginning the search for Plaintiff's replacement in May of 2019.

Plaintiff asserts Muina did not follow the company's progressive discipline policy with respect to Plaintiff's termination, did not formally document any of the alleged

8

performance deficiencies, did not provide Plaintiff any indication that her job performance was inadequate, and only made the decision to initiate the termination of Plaintiff on May 29, 2019. *See* PSOF ¶¶ 79–82. Moreover, Plaintiff contends, the company did not begin to compile documentation supporting Plaintiff's termination until after the termination. *Id.* ¶ 83. Plaintiff at no point received any performance evaluations prior to the one she received on June 17, 2019 purporting to evidence poor performance. *Id.* ¶ 84. Finally, Plaintiff adds, on July 19, 2019, Pardino sent an email to Muina about Plaintiff asking Muina to "document, document, document!" performance issues with Plaintiff. *Id.* ¶ 85.

The alleged protected activity of Plaintiff's FMLA claim is her conversation with Pardino on August 7. While close temporal proximity generally is probative of causation, the Eleventh Circuit has held that "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Here, it is undisputed that Defendant contemplated Plaintiff's termination months before she first engaged in protected activity under the FMLA. Thus, under *Drago*, causation cannot be established between Plaintiff's protected activity and her termination, which was planned months ago.

But that is not the end of the inquiry. Plaintiff separately argues the acceleration of her planned termination constitutes adverse action, which is in close temporal proximity to her protected activity. On this basis, the Court finds there are at least genuine questions of material fact whether Plaintiff can make out a prima facia case for retaliation. This conclusion is buttressed by *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1268–69 (11th Cir. 2010), where the Eleventh Circuit also found an adverse action had occurred

where an employer accelerated an employee's planned termination because "[t]he loss of a salary for a period of months, weeks, or days is a 'materially adverse' action . . . ." *Id.*

### 3. Legitimate, Non-Discriminatory Reasons for Termination

"The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (citations omitted). "If this occurs, and a prima facie case of discrimination is presented, the burden of producing evidence that the employer's action was taken for a legitimate, non-discriminatory reason then shifts to the employer." *Id.* (citations omitted). If the defendant meets this burden, "the presumption of discrimination is eliminated" and the burden shifts back to Plaintiff to show pretext. *Id.* at 1277–78. "The focused inquiry in the last step requires the plaintiff to demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Rioux*, 520 F.3d at 1275 (citations omitted).

Defendant repeats its earlier cast arguments that Defendant was dissatisfied with Plaintiff's job performance and took steps to terminate her long before she engaged in protected activity. The Court agrees with Defendant as to Plaintiff's retaliation claim in connection with the general termination adverse action. However, the Court disagrees with Defendant and finds there are genuine issues of material fact with regards to Plaintiff's retaliation claim in connection with the accelerated termination adverse action. Defendant's arguments are only dispositive of Plaintiff's overall termination (as an adverse action) that was planned months in advance. They do not portend to justify her accelerated termination specifically. Thus, the Court finds there are genuine issues of

material fact whether Defendant's purported legitimate, non-discriminatory reasons for Plaintiff's accelerated termination are mere pretext.

### B. FCRA

"Because Florida courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action is analyzed under the ADA." *Wimberly v. Sec. Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. 4th DCA 2004) (citing *Tourville v. Securex, Inc.*, 769 So. 2d 491, 492 n.1 (Fla. 4th DCA 2000)). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show she (1) is disabled, (2) is a "qualified individual," and (3) was subject to unlawful discrimination because of her disability. *See, e.g., Greenberg v. Bellsouth Telecomms., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007).

#### 1. Evidence of Disability

Under the ADA, to have a "disability" means to have "a physical or mental impairment that substantially limits one or more major life activities" or to be "regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12101(2)(A). The ADA Amendment Act of 2008 (the "ADAAA") amended the ADA to provide for a broad construction of the definition of disability. *See* 42 U.S.C. § 12102(4)(A). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Mazzeo v. Color Resolution Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). While "[t]he mere existence of an impairment . . . does not automatically limit a major life activity," *Simpson v. Ala. Dep't of Human Resources*, 311 Fed. Appx. 264, 267–68 (11th Cir. 2009), "[a]n impairment need not prevent, or significantly or severely restrict, the individual from

performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Thus, "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* And "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Here, Plaintiff cites her migraine disorder, anxiety disorder, non-specific seizure disorder, and cancer diagnosis as qualifying disabilities. She is prescribed medications to manage each disorder and regularly sees a physician for treatment of each one. *Supra* section III.A.1.a. During her migraines, Plaintiff asserts she cannot think clearly, cannot see, and experiences numbness in her arms. *Id.* With regards to her anxiety disorder, Plaintiff declares that it affects her ability to concentrate and think, deal with stress, sleep, eat, and communicate. Moreover, Plaintiff explains that when she experiences panic attacks, she has difficulty breathing. *See* PSOF ¶ 54. Plaintiff contends both conditions are debilitating and chronic. *Id.* ¶¶ 40, 49. Her non-specific seizure disorder requires her to take preventative medication to ensure she does not experience seizures in the future. *Id.* ¶ 56. When seizures do occur, they affect her central nervous system, her neurological system, and her brain. *Id.* ¶ 57. Finally, Plaintiff was diagnosed with cancer after the removal of a tumor from her appendix. *Id.* ¶¶ 59–61. Plaintiff declares her cancer affects the activity of normal cell growth regardless of whether the cancerous tumor has been removed and the cancer is in remission. *Id.* ¶ 62.

Defendant argues that Plaintiff admitted she is not disabled in her deposition and has failed to show that any major life activities are limited by any of her conditions. Moreover, Defendant continues, Plaintiff concedes she has been fully capable of performing her job at her subsequent employers, and there is no evidence Defendant's

12

agents considered Plaintiff to be disabled. That Plaintiff subjectively believes herself to not be disabled has no bearing on whether she is in fact objectively disabled under the ADA. Based on the factual contentions and characterizations lobbied by both sides, the Court finds that questions of material fact abound as to whether Plaintiff is disabled within the meaning of the ADA. This determination is only fit for a factfinder and is improper at the summary judgment stage.

### 2. Disability Discrimination

Defendant contends Plaintiff cannot show her termination was causally connected to her cited disabilities. Defendant points out that Plaintiff can offer no evidence that Muina or Defendant's agents discussed or acted upon Plaintiff's disabilities. Moreover, even if Plaintiff could establish a *prima facie* case of disability discrimination, Defendant submits, Defendant has shown a legitimate non-discriminatory reason for Plaintiff's termination.

The Court disagrees. Circumstantial evidence of discrimination abounds in the record. Plaintiff cites record evidence that Plaintiff had not previously received any complaints, reprimands, or other warnings regarding the adequacy of her job performance until her health began to deteriorate. *See* PSOF ¶¶ 72–81. And more telling, Plaintiff cites record evidence that her supervisor began searching for her replacement less than one month after Plaintiff disclosed to her supervisor that she had a cancerous tumor removed. *Id.* ¶ 65. This is particularly concerning given the fact that Plaintiff's supervisor had previously managed an employee with breast cancer and was thus aware of the potential treatment needs of an employee with cancer. *Id.* ¶ 66. Moreover, Defendant's company is alleged to have a progressive discipline policy, yet Plaintiff cites record evidence that there is no indication this policy was followed with regard to her. *Id.* ¶¶ 68–69, 72–81. Altogether, these cited portions of the record at the very least create genuine issues of

material fact whether Plaintiff's termination was causally connected to her cited disabilities.

### 3. Failure to Accommodate

To establish a prima facie failure to accommodate claim, a plaintiff must show she (1) was disabled, (2) was a qualifying individual, and (3) was discriminated against by Defendant's failure to provide a reasonable accommodation. *See Holton v. First Coat Serv. Options, Inc.*, 703 Fed. Appx. 917, 920–21 (11th Cir. 2017) (citations omitted). "[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made . . . ." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Defendant contends that Plaintiff has offered no evidence of her making a request for an accommodation or that Defendant was ever put on notice of the need to provide an accommodation. The Court disagrees. The record shows Plaintiff had previously requested and received leave when she experienced migraine or anxiety flare ups. Moreover, Plaintiff requested one week of leave set to start in early August 2019 due to a flare up of her conditions but was terminated only a few days before her leave was set to begin. A reasonable jury could conclude that Defendant was on notice of Plaintiff's various health issues and her need for occasional leave during flare ups and that Plaintiff made a request for an accommodation when she requested leave set to start in early August 2019. Accordingly, the Court finds there are at least genuine issues of material fact whether Plaintiff was discriminated against by Defendant's failure to provide a reasonable accommodation.

### 4. Retaliation

"As with disability discrimination claims, retaliation claims brought under the FCRA

are analyzed under the ADA framework." *Monroe v. Fla. Dep't of Corr.*, 793 Fed. Appx. 924, 928 (11th Cir. 2019). The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [under the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA])." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under either [the FMLA or ADA], an employee must demonstrate (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two. *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018) (citations omitted).

According to Defendant, even if Plaintiff was disabled and made an accommodation request, she cannot show causal connection between her termination and the protected request because her termination was the result of her supervisors recognizing her performance deficiencies over the span of several months. For the same reasons discussed *supra* section III.A.2, genuine issues of material fact on this claim render summary judgment improper.

### C. ERISA

"In the context of a § 510 claim alleging unlawful discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) that he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citations omitted). "To satisfy the last element the plaintiff does not have to prove discriminatory intent but must introduce evidence that suggests interference with ERISA rights was a motivating factor." *Id.* at 1223–24. However, "a

15

plaintiff must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (citations omitted). "An employer's unlawful motive may be established by direct or circumstantial evidence and the plaintiff is not required to prove that interference with ERISA rights was the sole reason for the discharge but must show more than the incidental loss of benefits as a result of a discharge." *Arroyo v. Nexus Servs. of Va., Inc.*, 2020 WL 9671337, at *3 (S.D. Fla. May 27, 2020) (quoting *Clark*, 990 F.2d at 1222–24) (internal quotes omitted).

Defendant argues Plaintiff cannot point to any record evidence of Defendant's intent to interfere with her ERISA benefits or protections. In Plaintiff's Response, she concedes that "the evidence does not support [her] Count VI interference with her ERISA rights, and therefore abandons those claims and does not contest judgment in Defendant's favor on Count VI." Resp., at 4 n.1 (DE [36]). Accordingly, summary judgment is granted in favor of Defendant on Count VI.

For the above reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (DE [25]) is **GRANTED IN PART AND DENIED IN PART**.
2. Count VI is **DISMISSED WITH PREJUDICE**.
3. Plaintiff's FMLA Retaliation claim is limited to the adverse action of her accelerated termination.
4. All other claims remain.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of December 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF

Copies furnished counsel via CM/ECF